OPINION OF THE COURT
Rose L. Rubin, J.
I.
By statutory scheme, enacted in 1965 as article 18-B of the County Law, legal representation of indigent persons accused of crime was enlarged. In his message accompanying approval of the bill, Governor Nelson A. Rockefeller wrote (McKinney’s Session Laws of NY, 1965, p 2117): “In our society, the right to counsel is as indispensable as the right to a fair trial, and, both must be protected if our system of justice under law is to continue and flourish. New York has always been a leader in the protection of the rights of its citizens and the approval of the second bill especially marks another great step forward in that tradition. In recent weeks, the highest court in this State has made it unmistakably clear that every defendant charged with crime must be afforded a meaningful opportunity to obtain the services of counsel. This bill provides the machinery for guaranteeing the true exercise of that right.”
As part of the statutory plan for representation of persons accused of a crime, section 722-d of article 18-B of the County Law provides that: “Whenever it appears that the defendant is financially able to obtain counsel or to make *275 partial payment for the representation or other services, counsel may report this fact to the court and the court may terminate the assignment of counsel or authorize payment, as the interests of justice may dictate, to the public defender, private legal aid bureau or society, private attorney, or otherwise.”
II.
The court’s research discloses meager authority relating to the implementation of this statute. By its language, it is clear that the statute invests the court with important case management responsibilities. While remaining sensitive to the imperatives of Gideon v Wainwright (372 US 335), to appoint competent counsel for indigent defendants in criminal cases, the court is authorized to terminate assignment of counsel or to direct payment of counsel or other fees in whole or in part where, on the report of counsel, a defendant is or becomes financially able to retain counsel or to make some payment. The statute creates a formidable potential for delay and calendar clogging issues which could impede the court’s primary responsibility to provide a fair and speedy trial. These considerations are raised in this case.
In the only decision on the issue, Matter of Legal Aid Soc. of Nassau County, N. Y. v Samenga (39 AD2d 912, 913), the court wrote: “We consider the report of counsel a predicate to any action on the part of the court to relieve counsel of the assignment * * * It should not be a matter for the courts in the first instance.”
The statute does not presuppose that counsel make a formal report. Where the facts of financial ability are brought to the court’s attention, the court may not ignore the information.
Depending upon the facts before it, the court may exercise its discretion, in the interests of justice, to terminate the assignment of counsel or may elect to direct payment. In People v Wheat (80 Misc 2d 844), the only reported decision on discretion exercised by a court, the court opted for the second alternative. Similarly here, partial payment appears to be in the interests of justice rather than termination of representation. It avoids additional delay in *276 proceeding to trial, at the same time as it vindicates the policy goals of the statute.
III.
This case presents appropriate circumstances to invoke and apply the statute. Here, defendant was charged with two counts of arson in the second degree and two counts of reckless endangerment in the second degree. He moved pretrial to suppress statements he allegedly made to a law enforcement officer. This court held a Huntley hearing on his motion. At the hearing he was represented by counsel assigned pursuant to article 18-B of the County Law. Prior thereto, defendant had appeared pro se and had filed motions on his own behalf. At the conclusion of the hearing, defendant requested an adjournment in order to retain his own attorney. On February 25, 28 and again on March 8, 1983 defendant requested adjournments to retain counsel of his own choosing. During this period assigned counsel continued to represent him. On March 8, 1983, the court rendered its decision, denying defendant’s motion to suppress. At the same time, it granted assigned counsel’s motion to be relieved. It instructed the defendant to appear with the attorney he proposed to retain on the next court date. The court referred defendant to the panel of attorneys provided by the Queens County Bar Association. Assigned counsel turned his file over to his former client.
On March 18, 1983 defendant appeared pro se. He reported that he had ascertained that attorney’s fees ranged from $3,000 to $5,000, that he had no funds, and that he could not pay the fees required for the services of private counsel.
The court allocuted defendant under oath. Defendant stated that he was working five days a week for a roofing company and had earned $2,000 in the two prior months. Additionally, he alleged that he also worked as a mechanic, off the books. He estimated that his take-home pay in 1982 was approximately $250-$275 a week, plus what he earned as a mechanic. He owns no assets and supports only himself. Giving due consideration to the foregoing and the necessity of avoiding further delay in proceeding to trial, the court assigned the Legal Aid Society to represent the defendant. At the same time, the defendant was in *277 structed that he would be required to contribute towards the legal fees. Defendant expressed his agreement.
Thereafter, further representation was provided by an attorney on the staff of the Legal Aid Society. He was apprised that the defendant would be required to and had agreed to make contribution towards his legal fees. The jury returned a verdict of “not guilty” on all counts, on April 14, 1983.
Following the jury verdict, the court again allocuted the defendant, under oath, in the presence of assigned counsel, as to his ability to contribute towards the cost of counsel fees. The court asked him whether he was employed. He responded in the affirmative, naming his employer, its address and the name of his supervisor. He stated that he works five days a week cleaning roofs after the roofer repairs them. He earns $50 a day, off the books. Additionally, he testified, he works as a part-time mechanic in a parking lot. He repeated that he is not on welfare but that his daughter and her mother, with whom he lives, are on welfare. The rental of the premises, he stated, is approximately $190 a month; his car, a 1970 Chevrolet, is worth about $300; he has no bank account and no jewelry except the watch he wears. Additionally, he said that he had never apprised the Department of Social Services about his income. He stated that a first cousin put up the $1,000 cash bail on which he was released. Defendant’s attorney neither participated in nor objected to these questions and answers.
IV.
Based upon this information the court found that the defendant is financially able to make partial payment for his legal representation and other services and, in the interests of justice, assessed $1,500 towards the cost of legal fees. Defendant’s attorney took no exception. Indeed, it was the defendant’s insistence that he wished to obtain his own counsel which alerted the court to his financial ability to do so in the first instance. Thus it was the defendant himself who reported the state of his financial ability to the court. The court’s procedure falls within the design of the Legislature in enacting section 722-d of article 18-B of the County Law.
*278 Upon inquiry by the court, the defendant stated that he could pay this amount at the rate of $50 a week, commencing Friday, April 22. Accordingly, the court confirms its oral order directing Rex Lee Bell to pay $1,500 towards the cost of his legal representation. He shall pay $50 a week commencing April 22, 1983, and every Friday thereafter, until the full amount is paid, by money order or certified check made payable to the Commissioner of Finance of the City of New York. Such payments shall be delivered to Lillian Abramowitz, room No. 719, 1 Centre Street, New York, New York.
The Commissioner of Finance is directed to allocate the payments toward reimbursement of funds disbursed by the City of New York pursuant to its contract with the Legal Aid Society. This contract obligates the Legal Aid Society to furnish legal aid to indigents who seek its services in New York City.