OPINION OF THE COURT
Victor B. Chambers, J.
Before the court stands a defendant, Stephen J. Clemson, who is 18 years of age, and is charged with the misdemeanor of petit larceny. Upon his arraignment he appeared with his parents and requested the assistance of counsel. When questioned further by the court he indicated that he had no income or assets, was indigent, and he requested the assignment of the Public Defender. He told the court that he resided with his parents, was not emancipated, and relied totally upon them for support. The defendant’s father told the court, in response to questions, that he was not indigent, and made over $45,000 per year, but that he would not provide private legal counsel for the representation of his son.
The court is thus presented with several issues. May the court take into consideration the financial resources of a criminal defendant’s parents in determining whether to assign counsel to represent him or her when the defendant is an unemancipated minor? If so, can the court direct the parent to provide an attorney, or must the court assign counsel pursuant to the applicable plan in its county and then direct the parent to repay the county? If the latter is the case, how does the court ensure that its mandate is enforced, and who is responsible for such enforcement? Is there a valid basis for distinguishing between cases in which the parent is a party before the court, and a case like the one at bar, where the parent is not a party? In order to enforce any obligation on the part of the parent, must a separate proceeding be brought?
In 1965 New York State enacted County Law article 18-B in response to the United States Supreme Court decision Gideon v Wainwright (372 US 335), which required free legal representation for indigent criminal defendants. The responsibility for providing such services was assigned to the various counties with four system choices being set forth in the statute (County Law § 722). Wayne County has adopted a combination plan: a Public Defender’s office staffed by part-time attorneys with independent assigned counsel from a list of volunteers used as a backup in case of conflicts of interest. Article 18-B goes on to define the levels of payment for assigned counsel *870 (§ 722-b), provide for nonlegal expenses (§§ 722-c, 722-e) and provides for termination of the assignment in case the defendant becomes able to pay for his legal services (§ 722-d). This last section also provides for full or partial payment by the defendant to the Public Defender or assigned counsel under the direction of the court "as the interests of justice may dictate”. Thus, on many occasions in the past this court has signed orders directing defendants to make partial payment to the county to defray the costs of defense. Enforcement of these orders would appear to be the responsibility of the County Attorney, but the reports are that this enforcement is spotty.
Section 413 (1) (a) of the Family Court Act provides that the "parents of a child under the age of twenty-one years are chargeable with the support of [said] child and, if possessed of sufficient means * * * shall be required to pay for child support a fair and reasonable sum as the court may determine”. " 'Child support’ ” is defined as "a sum to be paid pursuant to court order or decree by either or both parents * * * for care, maintenance and education of any unemancipated child under the age of twenty-one years” (Family Ct Act § 413 [1] [b] [2]). Section 416 of the Family Court Act provides that the court may include in the requirements for an order of support "the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, the expense of education, payment of funeral expenses and other proper and reasonable expenses”.
In determining whether a particular expense is one chargeable to a parent, courts have analyzed whether the expense is a "necessity” when applied to the particular child. Thus, clothing was found to be a necessity in Matter of Veneri v Veneri (40 AD2d 735). Medical expenses and education, both private and beyond the secondary level, have been the subject of similar analysis. (See, International Text Book Co. v Connelly, 206 NY 188; Wagner v Wagner, 51 Misc 2d 574, affd 28 AD2d 828, lv dismissed 20 NY2d 803; Matter of Monesi v Monesi, 55 AD2d 1020; Giuffrida v Giuffrida, 81 AD2d 905; Tannenbaum v Tannenbaum, 50 AD2d 539.)
The concept of counsel fees as necessities requiring contribution by a parent (or spouse) has been discussed in several cases. Matthews v Matthews (30 Misc 2d 681, 685, affd 18 AD2d 830, affd 14 NY2d 778) held that "[i]t is well settled that necessaries are not limited to food, clothing, habitation and education * * * but also include, among other things, the right of counsel. There can be no doubt, as a matter of law, *871 that legal service rendered to an infant to enforce his right is a necessary for which his father is liable”. This decision was affirmed by the Appellate Division and Court of Appeals. The case, however, is substantially different than the one at bar. There the legal services were rendered directly to the mother and indirectly to the children as she was their appointed guardian ad litem. The father was the respondent in the proceeding and the court had direct jurisdiction of him. In the case before this court the father is not a party.
Matthews (supra) cites Matter of Kaufman (272 App Div 323) and Elder v Rosenwasser (238 NY 427) as authority for the proposition quoted above. In Kaufman (supra, at 324), the court held that "the word 'support’ as used in section 1169 of the Civil Practice Act comprehends 'necessaries’ * * * which in turn includes counsel fees”. In Elder v Rosenwasser (supra, at 429-430), the court held that "[w]here a wife living with her husband whom he is obliged to support is arrested on a criminal charge or prosecuted in a civil action [that] may result in her incarceration, the necessity for a lawyer may be as urgent and as important as the necessity for a doctor when she is sick”. Again, however, these cases are different than the case at bar. Kaufman involved the application for payment of the wife’s legal fees out of a bail fund provided by the respondent husband. He was thus a party. Elder involved an application by a wife in a separation action brought against her husband to pay counsel fees in a different, but related proceeding. The court in both cases had direct jurisdiction over the parent or spouse sought to be charged.
This whole line of cases and reasoning was then picked up en masse and used as the basis for a decision in Matter of Cheri H. (121 Misc 2d 973). In this case Bronx County Family Court held that a. parent was responsible for the reasonable attorney fees incurred in a juvenile delinquency proceeding and directed the respondent’s father to pay a stated sum to the State for legal services provided to his daughter. The Family Court expressed concern over the mounting expenses for assigned counsel, and cited section 722-d of the County Law and People v Bell (119 Misc 2d 274), as authority for the proposition that a court may terminate the assignment of counsel or direct full or partial payment by the defendant should it become apparent that a " 'defendant is financially able to obtain counsel’ ” (Matter of Cheri H., supra, at 974). Reasoning that the Family Court Act required support for one’s unemancipated minor child, and applying the cases *872 above for the proposition that legal services are a necessity and part of the support obligation, the court substituted the father for the respondent under section 722-d and directed the father to make the payment instead. The court does not say how it obtained jurisdiction over the respondent’s father for the purpose of making or enforcing this order, but instead refers the matter to the Attorney-General of the State of New York, the Commissioner of Finance of the City of New York, and the Corporation Counsel of the City of New York "for appropriate action”. What that appropriate action is, who should bring the proceeding or what court should hear the matter is not addressed.
Another authority cited to the court for the position that a parent may be required to pay is 1989 Opinions of the Attorney-General (Inf Opns) No. 89-44. Two questions are posed by the opinion. First, may a county take into consideration the assets of a defendant’s parents in determining eligibility for County Law article 18-B representation? Second, may the cost of representation be recovered from the parents where their assets render them, and their child under 21, ineligible for article 18-B representation?
The opinion finds parents "responsible and chargeable” for the support of an unemancipated child under 21 and cites Family Court Act §§413 and 416 as authority. (Curiously, it also cites General Obligations Law § 3-112, a section I feel is irrelevant.) It finds legal fees to be included in the support obligation and cites Cheri H (supra), and Fanelli v Barclay (100 Misc 2d 471) as authority. Continuing with the theories expressed in Cheri H, the opinion refers to the required appointment of a Law Guardian and entitlement of the county to "recoup” this expense. (Matter of Cheri H. provided for payment to the State.) Continuing, the. Attorney-General quotes Cheri H. to the effect that " 'those parents * * * are subject to the provisions of section 722-d of article 18-B of the County Law’ ” (1989 Opns Atty Gen [Inf Opns] 128). At this point the Attorney-General opinion departs from Cheri H. While the latter holds that an appointment of a Law Guardian is necessary with eventual recoupment by the government of the attendant expense, the Attorney-General opinion states that it is "appropriate for the county to inquire into the parents’ assets in order to determine an application for article 18-B representation for an unemancipated child under age 21” (ibid, [emphasis supplied]). This implies that if the parents are found not to be eligible, no assignment of counsel for the *873 minor should be made. In this court’s opinion such action would clearly violate the directions of several cases, including Gideon v Wainwright (372 US 335, supra). Yet the opinion goes on and states that even if counsel had been appointed, and if the parents are thereafter financially able, the county may then "recover its costs for legal defense in accordance with County Law, § 722-d” (op. cit., at 128). Again, as in Cheri H., no procedure for the collection of these sums is suggested.
 Although the exact procedure is not indicated in either the Attorney-General opinion or in Cheri H. (supra), both opinions seem to imply that section 722-d of the County Law authorizes a court to order a direct payment from a parent to the government to pay for legal services rendered to an unemancipated minor. The opinions also imply that in such a situation the court may deny or terminate the assignment of counsel. I do not feel that such is the case and hold that section 722-d provides no summary power for a court to direct payment from anyone except a defendant. The words in section 722-d that "the court may * * * authorize payment, as the interests of justice may dictate” clearly apply to a defendant before the court and not to a defendant’s parents. The court simply has no jurisdiction over the parent and section 722-d certainly confers none. I further hold that where a financially able parent refuses to provide counsel for an unemancipated minor, the court must assign counsel according to the plan in operation in its county. Similarly a court may not terminate an assignment should it subsequently discover a financially able, but unwilling, parent.
All of the above does not mean, however, that government, State or county, may not recoup its expenses. It simply may not do so summarily. Legal services to an unemancipated minor are necessities for which a parent is responsible pursuant to sections 413 and 416 of the Family Court Act. The opinions of various courts set forth in this opinion consistently hold that, and I am aware of no contrary authority.
The furnishing of such services to an unemancipated minor whose parent is financially able creates a cause of action on behalf of the governmental entity which it may prosecute in any court of competent jurisdiction. The official responsible for the prosecution of such claims may be appointed or designated by legislative or executive officials and may be the Public Defender. A public welfare official, pursuant to the authority of Social Services Law § 102, is a designated person who may bring a proceeding for support pursuant to Family Court Act *874 § 422. Thus, it would appear that such an official could commence an action in Family Court to recoup such legal expenses.
The motion by the Public Defender to be relieved is denied as is the motion for an order directing the parents of the defendant to repay the County of Wayne for the legal services rendered to the defendant.