*284 OPINION OF THE COURT
Roger N. Rosengarten, J.
Defendant was charged, under indictment number 3525/00, with robbery in the first degree, robbery in the second degree, and related charges. After a jury trial before this court, the defendant was found not guilty of the felony charges, and guilty of misdemeanor weapons and possession of stolen property charges. At the time of his arrest on October 25, 2000, the defendant, who was born on November 16, 1980, was 19 years old, and resided with his father in Far Rockaway, Queens, in a home owned by his father. He has been very capably represented throughout in this matter by assigned counsel, the Office of Michele Maxian, which is the Legal Aid Society, mandated to represent indigent defendants in Queens County. The case came before this court for trial, at which time the defendant was being held on $10,000 cash bail. During the course of jury selection, on or about August 29, 2001, the defendant’s father, Alan Kearns, posted the cash sum of $10,000 to satisfy the bail condition and the defendant was released in court. Defense counsel, employed by the Legal Aid Society, made the court aware that his client had made bail and had been released. Based upon this information, on August 31, 2001, the court directed the defendant’s parent, Alan Kearns, to appear for an inquiry into his son’s eligibility for assigned counsel, to be held on September 4, 2001.
Eligibility Hearing — County Law § 722-d
Upon reviewing the testimony, and the applicable case law, this court makes the following findings of fact and conclusions of law:
Findings of Fact
As stated supra, an inquiry was held before this court on September 4, 2001. The court examined the defendant’s father, Alan Kearns, whom the court found credible. After due consideration, this court finds the following facts:
Alan Kearns testified that the defendant, Patrick Kearns, is his son, and that he is currently under 21 years of age. Alan Kearns is his son’s sole means of support. He has no dependents other than the defendant. The defendant resides with him in a home which Alan Kearns owns in Queens County. Alan Kearns failed to produce his prior three years New York State and federal income tax filings as directed by the court in *285 its order dated August 31, 2001. He stated that he is gainfully employed as an oil truck delivery driver for a home heating oil company and takes home $680 dollars a week ($35,000 per year). In addition to his base pay, he earns substantial overtime during the winter heating season months. Alan Kearns was unable to state the precise amount of his overtime pay. Since the defendant’s father failed to provide tax records which would have shown his exact gross pay, despite being ordered to do so, the court will assume that he earns in excess of the $39,375 required for presumptive eligibility for assigned counsel for a household consisting of two persons pursuant to the eligibility guidelines of the Second Department. The value of the home which Mr. Kearns owns in Far Rockaway, according to Mr. Kearns, is approximately between $135,000-$145,000. The home has a mortgage outstanding of $86,000. His mortgage payment is $808.58 per month. A computer search on the property conducted by the court revealed no other outstanding liens. He has no bank accounts or stocks or bonds. He does have a checking account. The defendant’s father posted $10,000 cash bail on behalf of his son from the proceeds of a compensation settlement which he received in the amount of $11,000. During the trial, the defendant also confirmed his age and the fact that he resides with his father, who supports him.
Conclusions of Law
Initially, this court finds that the defendant’s father, Alan Kearns, is legally responsible for providing the cost of legal expenses to the defendant, Patrick Kearns.
Pursuant to Family Court Act § 413 (1) (a),
“Except as provided in subdivision two of this section, the parents of a child under the age of twenty-one years are chargeable with the support of such child and, if possessed of sufficient means or able to earn such means, shall be required to pay for child support a fair and reasonable sum as the court may determine. The court shall make its award for child support pursuant to the provisions of this subdivision. The court may vary from the amount of the basic child support obligation determined pursuant to paragraph (c) of this subdivision only in accordance with paragraph (f) of this subdivision.”
Courts have held that legal services rendered to an unemancipated child are considered “necessities” for which a father *286 may be held liable (see, Matter of Cheri H., 121 Misc 2d 973 [Fam Ct, Bronx County 1983]; see also Fanelli v Barclay, 100 Misc 2d 471 [Nassau Dist Ct 1979]). “The unemancipated child without means who has been provided with necessaries may reasonably look to his father to bear the full responsibility for the costs thereof without regard to the fact that free legal services may be available to indigents.” (Fanelli, supra, at 475.) Pursuant to County Law § 722-d,
“Whenever it appears that the defendant is financially able to obtain counsel or to make partial payment for the representation or other services, counsel may report this fact to the court and the court may terminate the assignment of counsel or authorize payment, as the interests of justice may dictate, to the public defender, private legal aid bureau or society, private attorney, or otherwise.”
The Office of the Attorney General of the State of New York, in Informal Opinion No. 89-44 (1989 Atty Gen [Inf Opns] 126), addressed the questions of whether the assets of the parents of an unemancipated defendant under 21 may be taken into consideration in determining eligibility for County Law article 18-B representation, and whether the costs of representation can be recouped from the parents where the parents have sufficient assets to render them and their children under age 21 ineligible for article 18-B representation. After a review of salient statutory and case authority, the Opinion concluded that
“Inasmuch as it is the parents of an unemancipated child under age 21 who are responsible for the child’s necessary legal expenses, the parents are the true party whose financial ability to obtain counsel is at issue.
“Accordingly, it is appropriate for the county to inquire into the parents’ assets in order to determine an application for article 18-B representation for an unemancipated child under age 21 (see generally, Matter of Legal Aid Soc. of Nassau Co. v Samenga, 39 AD2d 912, 913 [2d Dept. 1972]; People v Bell, 119 Misc 2d 274, 275 [Sup Ct, Queens Co, 1983]; People v Wheat, 80 Misc 2d 844 [Co Ct, Suffolk Co, 1975]). If at any time during the action the parents of an unemancipated child under age 21 appear to be financially able to pay for their child’s legal defense, the county may recover its costs for *287 legal defense in accordance with County Law, § 722-d.” (1989 Atty Gen [Inf Opns], at 128 [citations as in original].)
As one court observed, “County Law § 722-d appears to be a grossly underutilized weapon in the battle of balancing a defendant’s right to counsel and the exploding financial burden to the State of providing free representation to those who are not fully able to afford private counsel” (see, People v Alessi, 154 Misc 2d 322, 324 [Sup Ct, Kings County 1992]). Numerous policy considerations underscore this statutory directive. County Law § 722 (2) mandates representation by the Legal Aid Society for persons charged with a crime who are financially unable to obtain counsel. The provision of these services is based upon eligibility guidelines promulgated by the Judicial Department overseeing such program, which require the court assigning counsel to review the income and financial status of the defendant, or, in the case of an unemancipated child, of the responsible parent or adult, and to screen for eligibility. The Appellate Division, Second Department, guidelines provide that defendants charged with felonies are presumptively eligible for assigned counsel when the gross household income is at or below 350% of the federal poverty standard. The case loads of these organizations are already overwhelmed by a plurality of indigent individuals who are presumptively eligible for these services at the expense of the taxpayers, by virtue of meeting the sanctioned guidelines. Courts should not stand idly by to allow services intended for those living at or below the poverty level to be dispensed to those who are middle class, have paying jobs which supply them with the ability to purchase a home, to supply an unemancipated child with the necessities of living, and to raise and post a substantial cash bail. These individuals are capable of affording counsel and should be compelled to do so. In instances where the responsible parent is unwilling to shoulder the burden, and the child avails himself of legal services earmarked for the indigent, the court can and should intercede pursuant to County Law 722-d (see discussion, Family Ct Act § 413, infra). Thereafter, the court should mandate reimbursement to the state, county or city funding authority, so that the funds can be properly relegated to their intended purpose, thereby promoting the efficient distribution of legal resources. In this court’s opinion, it works a grave disservice to the private defense bar, assigned defense counsel, and the criminal justice system itself to allow individuals who can well afford to pay for legal services to obtain free *288 services for the indigent as a means of avoiding their obligation to support their children.
While it would have been within this court’s power, pursuant to County Law § 722-d, to terminate assigned counsel representation during the trial, and to declare a mistrial, the court declined to do so at the trial stage for several reasons. First, this court agrees with the court’s reasoning in People v Clemson (149 Misc 2d 868 [Newark Vil Ct, Wayne County 1991]) and finds that a court presiding over a criminal trial has no compulsory authority to direct an unwilling parent, who is not a party to the criminal action, and over whom the court lacks jurisdiction, to provide counsel for an unemancipated minor (see, Matter of Cheri H., 121 Misc 2d 973 [Fam Ct, Bronx County 1983]). Moreover, a termination of assigned representation at the trial stage would only serve to interrupt the continuity of representation, and to forestall the disposition of this matter, on which substantial unrecoverable time and money has already been expended on assigned representation, not to mention the resources expended by the Unified Court System to bring this matter to a speedy conclusion. The better practice, on the eve of trial or at trial, in this court’s view, is to allow the trial to proceed in an orderly and expeditious fashion, and to thereafter proceed in accordance with County Law § 722-d, and Family Court Act § 413 to mandate repayment of legal expenses.
It is undisputed that the defendant herein is under 21, and unemancipated, and has remained so during the pendency of this criminal proceeding. He may thus properly look to his father for the cost of legal representation (Family Ct Act § 413). Using the eligibility guidelines established by the Second Department as a benchmark, the court finds Alan Kearns, the defendant’s father, ineligible for assigned counsel for his son. Moreover, he owns a home, in which he has conservatively over $50,000 of equity interest. Accordingly, in the interest of justice, pursuant to County Law § 722-d, this court directs the recoupment of costs for legal services provided by the Legal Aid Society for the representation of the defendant in this matter.
The only remaining issue before this court is the appropriate method for payment and/or recoupment of the costs of legal representation. County Law § 722-d is silent as to the sanctioned procedural vehicle for recoupment of the cost of legal services. This court opines that the Legislature should intervene to amend County Law § 722-d to provide a prescribed *289 procedural mechanism for recoupment of the costs authorized by this section.
This court looks to other courts addressing this issue for guidance. In two reported cases, the defendant himself was directed to make partial reimbursement of legal expenses pursuant to County Law § 722-d (see, People v Alessi, 154 Misc 2d 322 [Sup Ct, Kings County 1992] [defendant posting $10,000 bail ordered to make partial payment of $2,700 to the Legal Aid Society]; People v Bell, 119 Misc 2d 274 [Sup Ct, Queens County 1983] [defendant directed to pay $1,500 towards the cost of his legal representation by the Legal Aid Society]). In both cases, the defendant was a party properly subject to the jurisdiction of the court. In Fanelli v Barclay (100 Misc 2d 471 [Nassau Dist Ct]), the attorney of an unemancipated client in a support proceeding who brought an action in District Court against the responsible father was permitted to recover the fair and reasonable value of the services performed on behalf of the defendant’s son. In only one reported case, Matter of Cheri H. (121 Misc 2d 973 [Fam Ct, Bronx County 1983]), did the court summarily order the responsible parent of a juvenile, who was not a party to the action or subject to the jurisdiction of the court, to reimburse the State for legal services provided on behalf of his daughter in a delinquency proceeding. In People v Clemson (149 Misc 2d 868 [Newark Vil Ct, Wayne County 1991]), the court faulted the procedure prescribed in Matter of Cheri H. for two reasons: First, the court in Cheri H. failed to delineate a basis for jurisdiction over the respondent’s father for the purpose of making and/or enforcing an order directing payment, instead seeming to implicitly hold that County Law § 722-d authorizes direct payment from a parent to a governmental entity to pay for legal services rendered to an unemancipated minor. (People v Clemson, supra at 873.) In addition, Cheri H. did not set forth any procedure for enforcing the court’s order, or for bringing an action, should payment not be made, instead referring the matter to the Attorney General of the State of New York, the Commissioner of Finance of the City of New York, and the Corporation Counsel of the City of New York for “appropriate action,” without delineating what that action should be. (People v Clemson, supra at 872.)
This court, similarly to the court in People v Clemson, holds that County Law § 722-d does not, ipso facto, confer jurisdiction over the parent of an unemancipated minor to empower the court to summarily extract payment from the parent. To hold otherwise would be to circumvent jurisdictional and due *290 process prerequisites. Instead, the governmental entity furnishing such services to an unemancipated child can maintain a cause of action against any responsible parent, over whom jurisdiction can be obtained, which may be prosecuted in any court of competent jurisdiction by its attorneys (i.e., the Corporation Counsel of the City of New York in the case of New York City).
Final Determination
The Legal Aid Society is directed to submit a bill to the defendant’s father, Alan Kearns, for the cost of the legal representation to his son from the inception of their involvement in this matter through trial, and for any further proceedings on his behalf in accordance with the rate schedule set forth pursuant to County Law § 722-b, applicable to assigned counsel.
Alan Kearns is directed to remit the total amount billed in the form of a money order or certified check made to the Commissioner of Finance of the City of New York, and to deliver such payment to the Commissioner of Finance at 1 Centre Street, New York, New York.
The Commissioner of Finance is directed to allocate the payment toward reimbursement of funds disbursed by the City of New York pursuant to its contract with the Legal Aid Society.
In the event of nonpayment by Mr. Kearns, the Corporation Counsel of the City of New York is directed to take all necessary steps to commence a proceeding against Alan Kearns to recoup the monies expended, pursuant to County Law § 722-d.