*449 OPINION OF THE COURT
Robert A. Ross, J.
History
By decision and judgment of the Appellate Division, Second Department, dated May 3, 2011 (Matter of Cohen v Ross, 84 AD3d 799 [2011]), the defendant’s request for a writ of prohibition to stay these proceedings was denied, and the petition was dismissed.
By previous decision and order of this court (Ross, J.; op 32 Misc 3d 444) dated March 15, 2011, a hearing was scheduled for March 31, 2011 to determine whether defendant should make payment for assigned counsel. That assignment of counsel, as detailed within the transcript of proceedings before the court (DeStefano, J.) dated September 2, 2010 indicates:
“the court: In this case, the representation by someone saying he is not earning income, the representations that — the fact he had been incarcerated before for contempt, under those circumstances, under an abundance of caution I assigned counsel, and that’s why he is assigned, other than that part of it also says if there is a determination later that he can afford counsel that he would be required to pay. That’s also part of that order.
“mr capetola: I understand.
“the court: But there is no factual finding about his ability to pay.”
The statutory authority for this court’s determination of the issue before it is provided at section 722-d of article 18-B of the County Law:
“Whenever it appears that the defendant is financially able to obtain counsel or to make partial payment for the representation or other services, counsel may report this fact to the court and the court may terminate the assignment of counsel or authorize payment, as the interests of justice may dictate, to the public defender, private legal aid bureau or society, private attorney or otherwise.”
The available case law pertaining to the statute is minimal, but it does provide significant guidance. “The statute does not presuppose that counsel make a formal report. Where the facts of financial ability are brought to the court’s attention, the *450 court may not ignore the information.” (See People v Bell, 119 Misc 2d 274, 275 [1983] [emphasis added].)
Facts
The defendant, a diamond dealer/broker with offices in the jewelry district of New York City, steadfastly maintained that he was earning approximately $10,000 per year; that his residence in Port Washington, New York was provided to him without cost by his parents; and, that his business office was provided by an associate without cost in exchange for a percentage of referrals.
Prior to the commencement of a second contempt hearing on March 11, 2011, he settled all claims with full payment of $45,000 to the plaintiff. This stipulation of settlement “brought to the court’s attention” (see People v Bell, 119 Misc 2d at 275) the financial abilities of the defendant. Moreover, previous inconsistencies regarding the defendant’s finances from proceedings in this court, including a contempt hearing resulting in his incarceration (Zimmerman, A.J.S.C.), as well as proceedings in the Nassau County Family Court, some of which are part of this record, warranted this hearing to determine whether application of section 722-d of article 18-B of the County Law was a proper exercise of this court’s discretion.
As part of this scheduled hearing, defendant again requested appointment of counsel. Upon an inquiry of his finances, including business trips, leases, personal expenses, his statement of net worth, recent business sales, receipts and transactions, his representations were at times incredulous, or inconsistent with previous assertions. For one example, a three-week “business trip” to Europe did not generate any out-of-pocket expense to him. His meals, lodging, and incidental expenses were all purportedly paid for by family, friends and business associates. Additionally, his rental of his business offices was either “free” or paid for, depending upon which version of the facts I was asked to accept. His current financial abilities, in the face of payment of $45,000 to his wife, and his experience, training and long-standing self-employment as a diamond dealer/broker in the jewelry district of New York City render his self-proclaimed poverty to be feigned and wholly implausible. His most recent representations to the Appellate Division, Second Department, as contained as part of these proceedings (Matter of Cohen v Ross, supra), reflect additional liquid assets (savings) that were not included in his statement of net worth, that I inquired about only weeks earlier.
*451 Law
“A person who faces the possibility of imprisonment stemming from the willful violation of a previous order of the court has the right to the assistance of counsel.” (Matter of Scott v Scott, 62 AD3d 714, 715 [2009].) Waiver of the right to counsel must be founded on an explicit and intentional relinquishment which is supported by knowledge and a clear understanding of the right. (Matter of Samuel v Samuel, 33 AD3d 1010 [2006]; Matter of Brainard v Brainard, 88 AD2d 996 [1982].) The obligation of the court is to fully advise the party of his right to counsel; the right to appoint counsel is to be adequately explored, with counsel to be provided, if appropriate. (See Matter of Bader v Hazzis, 77 AD3d 742 [2010].) Failure to appoint counsel, when warranted, is error. (See Matter of Bader v Hazzis, supra.)
When a party indicates an inability to retain private counsel, the court, as it did here, must make inquiry to determine whether the party is eligible for court-appointed counsel. (Clemens v Clemens, 29 AD3d 932 [2006]; see Judiciary Law § 770; Holmes v Holmes, 89 AD2d 921 [1982]; Family Ct Act § 262 [a] [vi]; Matter of Dell v Dell, 135 AD2d 475 [1987].)
When fundamental rights such as the right to counsel in a matrimonial contempt proceeding are implicated (see Family Ct Act § 435 [a]; People v Spears, 64 NY2d 698 [1984]; Matter of Keenan v Keenan, 51 AD3d 1075, 1077 [2008]), the court is duty bound to make an inquiry whether the party is eligible for court-appointed counsel. (Gifford v Gifford, 223 AD2d 669 [1996]; Matter of Williams v Williams, 91 AD2d 1044, 1045 [1983].) But as part of this inquiry, it is axiomatic that a litigant is concomitantly obligated to provide complete information to the court as to his/her financial status, including an accurate sworn statement of net worth. (See Uniform Rules for Trial Cts [22 NYCRR] § 202.16; Domestic Relations Law § 236.)
The Level Playing Field
Undermining the defendant’s representations here were the resources that were available to him for purposes of settling a matrimonial matter — but not otherwise available or disclosed— when seeking assigned counsel from the court. There is a clear distinction between those who cannot pay legal fees and require representation and those who choose not to pay legal fees, and misstate their finances to secure representation without cost. I could not possibly articulate the anomie and angst of listening *452 to furtive and utterly shameful tales of defendant’s accounting of his financial status, rotely proffered by him to obtain counsel without any cost — as if he had nothing to lose. The superficial depiction of poverty was wholly undermined by his lifestyle, his business, his trips, and his previous retention of several prominent counsel in Family Court and Supreme Court. Such a scenario erodes confidence in our court system, and is an affront to the bar, our courts, and the public at large. Perhaps more compelling are the circumstances here, where the monied spouse seeks to receive free legal services and the nonmonied spouse pays for her own legal representation, completely obliterating the “level playing field,” a basic tenet of matrimonial law, as articulated by our Court of Appeals. (See O’Shea v O’Shea, 93 NY2d 187 [1999]; DeCabrera v Cabrera-Rosete, 70 NY2d 879 [1987].)
Upon misrepresentation of fact, the court has the authority to vacate an order. (See CPLR 5015 [a] [3]; [d].) Additionally, under the circumstances here, County Law § 722-d provides the court with discretion to “authorize payment, as the interest of justice may dictate” when it appears defendant is “financially able to obtain counsel.” (See People v Alessi, 154 Misc 2d 322 [1992]; People v Bell, 119 Misc 2d 274 [1983].)
Importance of the Right to Counsel
It must be emphasized how significant and sacrosanct the right to counsel must be viewed in criminal, as well as certain civil proceedings, within the Supreme and Family Courts of New York State. An integral component of the right to counsel is the availability of court-appointed counsel for those financially unable to hire an attorney. (Scott v Illinois, 440 US 367 [1979].) Such right is also provided under the New York State Constitution. (See NY Const, art I, § 6.) The statutory authority in New York implementing this right emphasizes that it is financial inability to retain counsel and not “indigency” which governs determinations for eligibility. (County Law § 722; CPL 170.10 [3], [4]; 180.10 [3] [c]; 210.15 [2] [c].)
But the expense of court-appointed counsel, borne here by the public at large, is wholly misspent and limited public resources are unduly wasted when compensation for legal services is provided under circumstances where the litigant’s true and accurate financial status at the time of appointment is misstated, concealed or, as in this case, wholly misrepresented. While Rules of the Appellate Division, Second Department (22 NYCRR) *453 § 691.16 (b) prevents assigned counsel from accepting a private retainer from an indigent defendant, the ambits of County Law § 722-d provide the court with the discretion and authority to direct payment by the litigant, as it must do here.
Upon the defendant’s failure to appear — Mr. Cohen called on the scheduled continued hearing date at 9:25 a.m. and indicated he would not be present — *have relied on the transcript of proceedings already had and the financial information already provided. Given the personal and business resources available to Mr. Cohen, his realized earning capacity, his existing corporate entity, his stated living expenses, and the purported support he receives from family and friends (see Wesche v Wesche, 77 AD3d 921, 923 [2010]; Matter of Collins v Collins, 241 AD2d 725 [1997]), the “interests of justice” (see County Law § 722-d) dictate that the defendant be directly responsible for payment for the legal representation he has received, predicated upon the circumstances of his clear financial ability to do so. (See County Law § 722-d.) This matter will be the subject of a fee determination hearing on May 16, 2011 at 9:30 a.m. to determine the appropriate compensation of legal fees to be paid by the defendant to his formerly assigned attorney, Robert C. Mangi, Esq., and entry of judgment therewith. (See County Law § 722-d; People v Bell, supra.)
In addition, this decision and order, together with the transcript of proceedings, shall be forwarded to the Office of the District Attorney of Nassau County for a review of material misrepresentations of fact made under oath in open court by Mr. Cohen, as it pertained to his financial eligibility for assignment of counsel.

 Five hours after he was scheduled to appear, at 2:45 P.M. on May 9, 2011, this court’s chambers received a facsimile transmission, which was brought to my attention. That transmission, which was “electronically authenticated” by his physician at 3:56 P.M. (and unsigned), indicated that Mr. Cohen complained of chest discomfort. The physical exam and testing reflect nonlabored respiration, clear breathing sounds, regular cardiac rhythm, normal palpitation, and normal heart sounds (SI, S2), with normal orientation, appropriate mood of the patient, and normal blood pressure. No medications were ordered, Mr. Cohen was released from his physician’s care with instructions not to lift heavy objects and to stop smoking. He then called the court the following day to indicate he was back at work in New York City, and “wanted to know” the status of his case.