OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Defendant father, Joseph Abadi, who holds an MBA degree from the Wharton School of Business of the University of Pennsylvania, moves for an order that this court appoint an attorney utilizing public funds to represent him in ongoing contested postjudgment litigation concerning access to the parties’ children and restrictions sought by plaintiff, his former wife.
Facts and Procedural Background
The parties were married in August 2007 in Oakhurst, New Jersey. The parties have two children, a son who is six years old and a daughter who is five years old. A judgment of divorce based upon a stipulation of settlement was signed on July 25, 2012.
The parties have been involved in extensive postjudgment litigation surrounding the issue of custody and visitation. The most recent dispute, inter alia, centers around the defendant’s request that the plaintiff be barred from removing the children for purposes of litigation to his native Panama.
It appears that during the most recent visitation, which had previously been the subject in and of itself of prior postjudgment litigation, the defendant claims through no fault of his own the children were barred from leaving Panama, and he could not return them to the United States in a timely fashion pursuant to stipulation and court order. The plaintiff argues that the defendant is at fault for the children not being returned and that his purposeful acts and then attempts to have her sign a new agreement relating to access were his true motive.
This court issued an ex parte order on February 3, 2015 directing that the children be returned to the plaintiff in New York State and has on a temporary basis barred the defendant from removing the children from the State of New York. That order remains in effect. The children were returned to New York pursuant to that order.
The defendant, who was previously represented by counsel, represented on the record that he owed his prior attorneys, *382 Randi L. Karmel, PLLC, the sum of $35,092.66 and Gottlieb, Rackman & Reisman, PC. the sum of $3,930. He also represented that he paid his former wife’s attorneys, Cohen, Clair Lans Griefer & Thorpe, LLP, the sum of $45,000 in full satisfaction of the plaintiff’s attorney fees, pursuant to a prior consent order revolving around postjudgment litigation. The record dated March 17, 2014 states, “it is further stipulated that defendant shall pay the plaintiff’s law firm in the sum of $45,000.00 in full satisfaction of counsel fees for the purposes of the litigation that’s before the court at the present time. Payment to be made within 120 days from today’s date.”[1]
Defendant stated in open court on March 2, 2015 that “I paid Mr. Greifer $45,000.00. I took out every loan that I could in order to be able to pay him $45,000.00.”[2]
On February 11, 2015 the defendant father filed a postjudgment order to show cause seeking to receive a court appointed attorney on the issues of custody and visitation. On February 23, 2015 plaintiff mother filed an affirmation in opposition requesting the court deny defendant’s application seeking a court appointed attorney. On February 26, 2015 defendant filed a reply to plaintiff’s opposition papers seeking to receive a court appointed attorney.
Defendant’s Contentions
In support of his position, the defendant asserts that government funds should be utilized to provide him with legal representation in the instant latest postjudgment dispute. He claims that his earnings are $18,371 in U.S. dollars for the year 2014, and he is unable to obtain counsel because of his inability to pay legal fees. He concedes that he traveled between the United States and Panama frequently and that he has borrowed large sums of money to pay his debts. He asserts that he has total debt in student loans of $40,388.03. He has another debt from Banistmo S.A. in the amount of $29,521.15. He also has credit card debt in the amount of $24,095.36. Additionally, he has liabilities in the form of counsel fees in the amount of $84,022.66.
Defendant further claims that despite diligent efforts in both Panama and in the United States he has been unable to obtain employment commensurate with his education. Defendant claims he has been seeking employment in the United States *383 but if he is unable to obtain he intends on returning to Panama toward the end of the month of March.[3]
Defendant also asserts that he has searched for private legal counsel but has not been able to secure counsel due to his lack of finances. Further, defendant claims that he has not provided the court with any fraudulent or perjured tax returns in his motion papers.
Plaintiffs Contentions
The plaintiff mother opposes the request that the defendant be provided with government financed funds for litigation. She claims that he is provided sums of monies from his parents and she claims through counsel at oral arguments that the tax returns annexed to his papers were just submitted even though they are for the last three years and that the copies provided are unsigned. Plaintiff further argues that the defendant holds an MBA degree from the Wharton School of the University of Pennsylvania and that he earned an annual base salary of $135,000 with a minimum bonus of 30% of his base salary previously in 2007.[4] The plaintiff further argues that if the defendant devoted as much time to obtaining employment as he does to litigation he would obtain successful employment.
Plaintiff further argues that the alleged debts listed on defendant’s affidavit of net worth postdate June 2014. Plaintiff claims that, according to defendant’s own sworn statement, he has been unemployed since March 15, 2014, yet he has not incurred any debt since June 2014. Plaintiff claims this further strengthens her argument that defendant is receiving funds from somewhere, most likely his family.
Further plaintiff argues that defendant continues to fly regularly back and forth to his native Panama. He is able to pay the cost of these round trip flights from Panama to New York frequently without a problem. Plaintiff contends that defendant is not an individual who has fallen on tough economic times, thus his request for assigned counsel from state funds should be denied. At a court appearance on March 31, 2015, plaintiff’s counsel represented that his client is unemployed and her legal fees are being paid by her father.
*384 The Law
The assignment of counsel to represent adults who are unable to afford counsel is provided for in Judiciary Law § 35 (8) which states,
“Whenever supreme court shall exercise jurisdiction over a matter which the family court might have exercised jurisdiction had such action or proceeding been commenced in family court or referred thereto pursuant to law, and under circumstances whereby, if such proceedings were pending in family court, such court would be required by section two hundred sixty-two of the family court act to appoint counsel, supreme court shall also appoint counsel and such counsel shall be compensated in accordance with the provisions of this section.”
Defendant meets the requirements under Family Court Act § 262 (a) (v) which states,
“(a) Each of the persons described below in this subdivision has the right to the assistance of counsel. When such person first appears in court, the judge shall advise such person before proceeding that he or she has the right to be represented by counsel of his or her own choosing, of the right to have an adjournment to confer with counsel, and of the right to have counsel assigned by the court in any case where he or she is financially unable to obtain the same: . . .
“(v) the parent of any child seeking custody or contesting the substantial infringement of his or her right to custody of such child, in any proceeding before the court in which the court has jurisdiction to determine such custody.”
Defendant also meets the requirements under Family Court Act § 262 (b) which states,
“(b) Assignment of counsel in other cases. In addition to the cases listed in subdivision (a) of this section, a judge may assign counsel to represent any adult in a proceeding under this act if he determines that such assignment of counsel is mandated by the constitution of the state of New York or of the United States, and includes such determination in the order assigning counsel.”
Thus, under Judiciary Law § 35 (8) defendant is eligible for the *385 assignment of counsel in the instant latest postjudgment dispute before this court.
The legislative history of said provision states,
“The bill amends section 35 of the judiciary law to provide that whenever supreme court shall exercise jurisdiction over a matter which the family court could have exercised jurisdiction had such action been commenced in family court, supreme court shall appoint counsel for indigent persons in the same manner as required by section 262 of the family court act.” (Senate Introducer Mem in Support, Bill Jacket, L 2006, ch 538 at 4.)
The legislature enacted this modification to correct the “inconsistency [that] results in a denial of representation simply based on the venue of the case.” (Id.)
Prior to this modification, an indigent person in a custody dispute in Family Court was awarded representation, but the same indigent person was not awarded representation in Supreme Court because of the venue chosen. Additionally, the amendment discusses an example of a possible divorce proceeding where “a monied spouse can commence a divorce action in supreme court to insure his or her indigent spouse cannot benefit from FCA section 262 with respect to the custody determination.” (Id.) Thus, Judiciary Law § 35 (8) provides for an indigent person to be awarded representation in Supreme Court on custody matters. This court cannot draw any distinction for such an appointment being made only prejudgment. The statutory right applies to both pre and postjudgment proceedings.
Discussion
In this case, defendant makes a sufficient threshold showing under extensive case law that would warrant government funds to be utilized to provide defendant with legal representation in the instant latest postjudgment dispute.
This court has some very serious concerns as to whether or not taxpayer funds should be utilized to provide counsel to an individual though who holds an MBA from one of the most prestigious business schools in the country, especially where he does not adequately explain why he has not obtained commensurate employment either here or in Panama. It is true that he appears to spend a substantial amount of time in preparation of court documents and litigation. *386 The court cannot ignore that “deprivation of a party’s fundamental right to counsel in a custody or visitation proceeding is a denial of due process and requires reversal, without regard to the merits of the unrepresented party’s position.” (Matter of Williams v Bentley, 26 AD3d 441, 442 [2d Dept 2006]; see also Matter of Bly v Hoffman, 114 AD3d 1275 [4th Dept 2014]; Matter of Dashawn N. [Youvonne N.], 101 AD3d 1013 [2d Dept 2012]; Matter of Rosof v Mallory, 88 AD3d 802 [2d Dept 2011].) In Williams, the Appellate Division held the Family Court improperly conducted a custody trial without the mother’s lawyer and awarded custody to the father, after the mother requested a lawyer. Additionally, the Appellate Division held that requiring the mother to proceed without an attorney in the custody case “violated the mother’s right to be represented by counsel.” {Id. at 441.) The Appellate Division reversed the decision and remanded the case to Family Court.
Further, “the deprivation of the mother’s fundamental right to counsel requires reversal, without regard to the merits of her position.” (Matter of Pugh v Pugh, 125 AD3d 663, 664 [2d Dept 2015].) In Pugh, the Appellate Division, Second Department, recently held that the mother was forced to litigate the case as a pro se litigant because she was unable to retain a lawyer after many adjournments and delays in the court proceedings. Additionally, the Appellate Division found that a
“waiver of the right to counsel must be founded on an explicit and intentional relinquishment which is supported by knowledge and a clear understanding of the right. In order to determine whether a party is validly waiving the right to counsel, the court must conduct a searching inquiry of the party who wishes to waive that right and thus proceed pro se.” {Id. [internal brackets and quotation marks omitted].)
The Appellate Division did not state that a strict formula must be followed to arrive at this conclusion, but the record must show that the party knew of “the dangers and disadvantages of proceeding without counsel.” (Id.) The Appellate Division further stated that
“[g]iven the mother’s statements indicating that she lacked the funds to retain private counsel, the Family Court should have inquired further into the mother’s financial circumstances, including, but not limited to, inquiring about her expenses, to determine whether she was eligible for assigned counsel.” (Id.)
*387 The Family Court did not inquire into the mother’s financial circumstances. The case was remanded for a new hearing.
Consistent with the holding in Pugh, this court by separate order has appointed Joel Borenstein, Esq., as the attorney for the adult pursuant to section 35 (8) of the Judiciary Law.
The court cautions the defendant of his ongoing obligation to seek employment and that in these austere budgetary times the utilization of government funds must be tempered with providing those who are truly in need of appointment of counsel. The court reserves the right to direct reimbursement to the State of New York for the funds expended. County Law § 722-d (duration of assignment) states:
“Whenever it appears that the defendant is financially able to obtain counsel or to make partial payment for the representation or other services, counsel may report this fact to the court and the court may terminate the assignment of counsel or authorize payment, as the interests of justice may dictate, to the public defender, private legal aid bureau or society, private attorney, or otherwise.”[5]
Furthermore, in Matter of Cherrez v Lazo (102 AD3d 782, 783 [2d Dept 2013]) the Appellate Division held “the father had the financial ability to pay the entire cost of the representation provided to him.” (See also Cohen v Cohen, 33 Misc 3d 448 [Sup Ct, Nassau County 2011].) In Cherrez, the Appellate Division affirmed an order from Family Court after a hearing was made, directing the father to pay his assigned counsel, “the difference between the amount the attorney would charge a privately retained client for the services rendered and the amount the attorney claimed from the assigned counsel plan.” (Id.) Additionally, the Appellate Division supported the Support Magistrate’s evaluation method “of the father’s financial circumstances, including his income and the properties he owned.” (Id.)
*388 The use of public funds to pay for counsel brings forth the question as to when it is appropriate to appoint counsel when it appears that an individual should be employed.
While this court has acted herein on the side of caution, it must be recognized that the defendant has an obligation to seek employment and if he chooses not to utilize the advanced degree he holds, then his obligation to seek other employment not in his chosen profession is paramount.
If the defendant voluntarily chooses not to be employed then the use of taxpayer funds would be inappropriate. If he cannot locate employment utilizing his MBA degree from the Wharton School of Business of the University of Pennsylvania then he must seek other employment. The right to counsel appointed by the court is not limitless and those resources must be utilized for those who truly cannot afford counsel.
Thus, the court will hold a hearing at the conclusion of this case to determine if the defendant shall be responsible for repayment of fees and disbursements to the State of New York.
Conclusion
Accordingly, for the aforesaid, defendant’s application requesting a court appointed attorney is granted on the custodial issues presented in the instant latest postjudgment dispute before this court.

. See defendant’s order to show cause, exhibit 4, court tr dated Mar. 17, 2014 at 44-45.

. See court tr dated Mar. 2, 2015 at 16.

. (See defendant’s reply to plaintiff’s opposition papers, exhibit 2.) Defendant shows various emails sent to potential employers, but it is difficult for the court to discern which emails were actually sent and what they contained.

. See plaintiff’s opposition papers, exhibit D.

. This section provides for reimbursement of county funds used to pay an attorney appointed pursuant to the County Law. It follows that, where the record subsequently reveals that a litigant is or was financially able to obtain counsel or to make partial payment for the representation appointed to represent the litigant, the court can order that litigant to reimburse New York State for State funds used to pay appointed counsel under Judiciary Law § 35 (8).