CITY OF BUFFALO URBAN RENEWAL AGENCY, Appellant, v
ALBERT E. MORETON, Respondent, et al., Condemnees.

Fourth Department, March 6, 1984

APPEARANCES OF COUNSEL

*John J. Naples, Corporation Counsel* (*Gregory J. Dudek* of counsel), for appellant.

*Stanley J. Collesano* for respondent.

OPINION OF THE COURT

HANCOCK, JR., J.

On May 1, 1979, pursuant to articles 15 and 15-A of the General Municipal Law, the Common Council of the City

of Buffalo unanimously approved Entertainment District Urban Renewal Plan, Phase I, covering four city blocks in downtown Buffalo. Thereafter the plan was duly approved by the Mayor. In this proceeding, brought by petition verified June 6, 1983 pursuant to EDPL article 4, condemnor, Buffalo Urban Renewal Agency (hereinafter the agency), seeks to acquire a rectangular parcel covering approximately 2,557 square feet owned by the condemnee Moreton and located within Phase I at the corner of Main and Chippewa Streets. In his verified answer to the agency's application for an order authorizing the filing of the acquisition map and directing immediate vesting of title pursuant to EDPL 402, the condemnee specifically denies that the acquisition of the premises is for a public purpose and alleges that the sole purpose of the condemnation is to benefit private owners of adjoining property. On the return date of the motion Special Term, at the request of the condemnee, ordered that a hearing be conducted before it to determine whether the taking serves a public purpose. By permission of our court, the agency appeals from the order directing the hearing and requests that the order be annulled and that the order authorizing filing of the acquisition map and directing immediate vesting be granted or, in the alternative, that the hearing be limited to whether the procedural requirements of EDPL article 4 have been met (EDPL 402, subd [B], par [5]). Several questions are presented pertaining to proceedings to acquire property under the Eminent Domain Procedure Law (L 1977, ch 839, § 1).

The agency contends first that under EDPL article 2, Special Term is precluded from holding a hearing with respect to whether the public use will be served by the proposed project. This point requires no discussion since, by the express mandate of EDPL 207 (subd [B]) and 208, except for the Appellate Division and the Court of Appeals "no court of this state shall have jurisdiction to hear and determine any matter, case or controversy concerning any matter which was or could have been determined in a proceeding under this article" (EDPL 208). Since the question of the public use, benefit or purpose to be served by the project is one of the matters that could have been deter-

mined in a proceeding under article 2 (see EDPL 201, 204, subd [B], par [1]; 207, subd [C], par [4]), Special Term was without jurisdiction and its order directing a hearing must be reversed (see *County of Monroe v Morgan,* 83 AD2d 777).

The agency, however, asks that we modify the order by granting the relief it says Special Term improperly withheld under EDPL 402 (subd [B], par [5]), i.e., the requested order authorizing filing of the acquisition map and directing immediate vesting. There is no question that we have the power as an appellate court to grant such relief if we find Special Term was in error (see CPLR 5522; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5522:1, C5522:2, pp 222, 223; *Saxton v Carey,* 61 AD2d 645, affd 44 NY2d 545). Whether Special Term should have granted the application requires discussion.

On the return of an application for permission to file an acquisition map and for an order to acquire the property (EDPL 402, subd [B]), the court must grant the petition if it finds that all of the procedural requirements of the statute have been met (EDPL 402, subd [B], par [5]; 17 Carmody-Wait 2d, NY Prac, pp 584-585). From the record there appears to be no question concerning the agency's due compliance with any procedural requirement for acquisition except one: the agency conducted no preacquisition hearing as mandated by EDPL 201[1] (see EDPL 402, subd [B], par [3], cl [a]). The agency claims that because of the public hearings conducted in 1979 prior to the approval of the urban renewal plan, it is exempt from article 2 compliance under EDPL 206 (subd [C]) and, in its petition, in lieu of a statement of compliance it has, as permitted by EDPL 402 (subd [B], par [3], cl [a]), set forth the basis for the claimed exemption. Special Term made no specific determination on the question, but since it ordered a hearing on the public purpose issue and declined to grant the petition, it may be presumed that it found that the proposed acquisi-

1. EDPL 201 reads as follows: "Except as provided herein, prior to acquisition, the condemnor, in order to inform the public and to review the public use to be served by a proposed public project and the impact on the environment and residents of the locality where such project will be constructed, shall conduct a public hearing in accordance with the provisions of this article at a location reasonably accessible to the property owners whose property might be acquired for such project."

tion was not exempt from article 2 compliance. Our analysis leads to the opposite conclusion.

Prior to acquiring land, a condemnor generally must comply with the hearing requirements of EDPL article 2, which prescribes rules for the location of the hearing (EDPL 201), the content of the hearing notice and its publication (EDPL 202), the conduct of the hearing (EDPL 203) and the specific determinations and findings the condemnor must make following the hearing (EDPL 204). One of the purposes of an article 2 hearing is to inform the public of "the public use to be served by [the] proposed public project" (EDPL 201), and one of the specified determinations and findings that the condemnor must make following the hearings concerns "the public use, benefit or purpose to be served by the proposed public project" (EDPL 204, subd [B], par [1]) (see 17 Carmody-Wait 2d, NY Prac, pp 560, 561, 562).

Exemptions from the article 2 hearing requirements are permitted under specific circumstances: e.g., when the condemnor has, prior to the acquisition, considered and submitted factors similar to those required to be found following an article 2 public hearing (see EDPL 204, subd [B]) to a governmental agency and has obtained a license, permit or similar approval from such agency (EDPL 206, subd [A]; see *County of Monroe v Morgan,* 83 AD2d 777, *supra*); when it has obtained a certificate of environmental compatibility and public need pursuant to article VII or article VIII of the Public Service Law (EDPL 206, subd [B]; see *New York State Elec. & Gas Corp. v Karas,* 85 AD2d 758); when the proposed acquisition is *de minimis* or when due to a public emergency the public interest will be endangered by any delay caused by the hearing (EDPL 206, subd [D]; see *Matter of City of Yonkers v Hvizd,* 93 AD2d 887; *Matter of American Tel. & Tel. Co. v Salesian Soc.,* 77 AD2d 706; *Matter of Incorporated Vil. of Malverne,* 70 AD2d 920); or when it has complied with section 41.34 of the Mental Hygiene Law (EDPL 206, subd [E]). The agency, citing the 1979 urban renewal hearings, claims to be exempt under EDPL 206 (subd [C]) which provides for exemption when the condemnor has, prior to acquisition, conducted "one or more public hearings upon notice to the

public and owners of property to be acquired" provided "that factors similar to those enumerated in subdivision (B) of section two hundred four herein [were] considered at such public hearings" (EDPL 206, subd [C]). Its allegations that in obtaining approval of "Entertainment District Urban Renewal Plan, Phase I", in 1979 it conformed to the requirements of article 15 of the General Municipal Law are not refuted. The question is whether the factors considered at the public hearings prior to approval of the plan are sufficiently similar to those enumerated in EDPL 204 (subd [B]) to warrant an exemption from conducting new hearings under article 2. The three factors specified in EDPL 204 (subd [B]) are: the public use, benefit or purpose to be served by the project; the approximate location for the project and the reasons for its selection; and the general effect of the project on the environment and residents of the locality. No question is raised concerning the location of the project or its effect on the environment or residents; thus, the only question is whether the proceedings held pursuant to article 15 of the General Municipal Law addressed the factor of the public use, benefit or purpose to be served. The answer requires an analysis of those proceedings.

After an area has been designated for urban renewal (General Municipal Law, § 504) and a plan has been prepared (General Municipal Law, § 505, subd 1), and prior to its ultimate approval by the municipality, two public hearings held on due notice are mandated: the first before the commission[2] (General Municipal Law, § 505, subd 2) and the second before the governing body[3] (see General Municipal Law, § 505, subd 3). Following the hearing required by subdivision 2 of section 505 of the General Municipal Law, the commission must certify whether the plan conforms to the finding made at the time of site designation that the proposed area "is appropriate for urban renewal" (General Municipal Law, § 504) as defined in subdivision 3 of section 502 of the General Municipal Law which reads, in part, as follows: "3. 'Urban renewal.' A program established, con-

---

**2.** "Commission" as defined in subdivision 8 of section 502 of the General Municipal Law and as related to this proceeding means the Buffalo Planning Board.

**3.** "Governing body" as defined in subdivision 1 of section 502 of the General Municipal Law and as related to this proceeding means the Buffalo Common Council.

ducted and planned by a municipality for the redevelopment, through clearance, replanning, reconstruction, rehabilitation, and concentrated code enforcement, or a combination of these and other methods, of substandard and insanitary areas of such municipalities, and for recreational and other facilities incidental or appurtenant thereto, pursuant to and in accordance with article eighteen of the constitution and this article".

The governing body, upon its approval after conducting its public hearing, must find by resolution, among other things, that the area "is a substandard or insanitary area, or is in danger of becoming a substandard or insanitary area and tends to impair or arrest the sound growth and development of the municipality" (General Municipal Law, § 505, subd 4, par [a]).

Here, pursuant to article 15 of the General Municipal Law, the Buffalo Common Council (the governing body) authorized the preparation of the Entertainment District Urban Renewal Plan, Phase I, on February 20, 1979; the planning board (the commission) certified its unqualified approval of the plan after a duly noticed public hearing and transmitted it to the Buffalo Common Council. The common council then reviewed the plan at a public hearing held on due notice and at the close of the hearing on May 1, 1979 unanimously approved it.

The findings of the common council and the planning board that the area was substandard or insanitary and suitable for an urban renewal program were determinations which these bodies were specifically authorized to make by section 1 of article XVIII of the New York Constitution and by legislative enactment (General Municipal Law, arts 15, 15-A) (see *Kaskel v Impellitteri,* 306 NY 73, 78); and such findings, it is held, are the equivalent of determinations by the legislatively authorized local agencies that the program and acquisitions necessary to implement it have a public purpose (see *Yonkers Community Dev. Agency v Morris,* 37 NY2d 478, 482; *Cannata v City of New York,* 11 NY2d 210; 215; *Matter of Fix v City of Rochester,* 50 Misc 2d 660, 665). It follows, then, from the fact that prior to approval of the plan the local agencies necessarily made the required findings that the area was

substandard or insanitary and suitable for urban renewal (see General Municipal Law, § 505, subds 2, 4, par [a]) that the factor of "public use, benefit or purpose to be served by the proposed public project" (EDPL 204, subd [B], par [1]) was considered. The condemnee here, it must be noted, does not claim that, as a property owner, he did not receive notice of the 1979 hearings. Nor does he assert that the proceedings culminating in approval of the program were not in total compliance with article 15 of the General Municipal Law. We hold, therefore, in view of the scope and nature of the urban renewal hearings and the findings that the program has a public purpose inherent in the approvals by the planning board and common council (see *Yonkers Community Dev. Agency v Morris, supra,* p 482; *Cannata v City of New York, supra,* p 215; *Kaskel v Impellitteri, supra*) that additional hearings pertaining to public purpose would be duplicative and that this acquisition is exempt from article 2 compliance under EDPL 206 (subd [C]).[4] Because no question of procedural compliance other than exemption from the article 2 hearing requirements was raised, Special Term should have granted the petition (see EDPL 402, subd [B], par [5]).

We have held that Special Term has no authority to determine the question of public use (EDPL 207, 208), that no additional hearings on this question are required in view of the exemption under EDPL 206 (subd [C]), and that, because all procedural requirements under EDPL 402 (subd [B], par [5]) have been complied with, Special Term should have granted the motion under that provision. Whether a public use will be served by the proposed acquisition has, nevertheless, been put in issue by the condemnee's answer and is a question exclusively for our court to determine (EDPL 207, 208). The question, we point out, does not come to us in a discrete judicial review proceeding commenced in the Appellate Division as contemplated by EDPL 207.[5] We can, nevertheless, review it

---

**4.** No question is raised concerning the propriety of our deciding the issue of EDPL 206 exemption in this appeal. As a practical matter, the only way the issue can come before us is by appeal since presenting the question in a separate EDPL 207 review proceeding in the Appellate Division (see EDPL 207, subds [B], [C], par [3]; 208) where there have been no hearings or determinations under EDPL article 2 would be impossible (see n 5, *infra*).

**5.** Because the acquisition here is exempt from article 2 compliance (EDPL 206) and there have been no hearings conducted (EDPL 201) or findings and determinations made

in this appeal on the record before us (see *County of Monroe v Morgan,* 83 AD2d 777, 778, *supra*).

Where, as here, the legislatively authorized local agencies have duly approved an area for an urban renewal program, the determination necessarily subsumed in such approval (i.e., that land acquisitions necessary for the program are for a public purpose) is reviewable by the court "only upon a limited basis" (*Yonkers Community Dev. Agency v Morris, supra,* p 484, see, also, p 485). We need not and do not consider that these municipal agency approvals pursuant to subdivisions 2 and 3 of section 505 of the General Municipal Law would, under all circumstances, be conclusive on the question of public purpose (see *Yonkers Community Dev. Agency v Morris, supra,* p 485). Here, however, the condemnee has submitted no more than an answer denying that the acquisition is for a public purpose and alleging in conclusory terms, upon information and belief, that the condemnation is for the benefit of owners of adjoining property. No fact establishing any new matter constituting a defense to the proceeding is set forth (see EDPL 402, subd [B], par [4]). On this record and in view of the weight that must be accorded the findings of the planning board and the common council in approving the area for urban renewal (see *Yonkers Community Dev. Agency v Morris, supra,* p 482; *Cannata v City of New York, supra,* p 215), we have no hesitancy in finding that the acquisition is for a public purpose.

The order directing a hearing at Special Term should be reversed and the petition should be granted.

as required by EDPL 204 (subd [B]), there are no determinations and findings that could be the subject of a separate review proceeding brought in the Appellate Division pursuant to EDPL 207. It is obvious that review by this court under EDPL 207 under these circumstances is impossible and that an interpretation of EDPL 207 and 208 that the exclusive method of reviewing a question of public use is by way of an EDPL 207 petition in the Appellate Division would foreclose a condemnee from any review. We note also that a review and determination by the Appellate Division on the question of article 2 exemption as called for in EDPL 207 (subds [B], [C], par [3]) and 208 is an impossibility when the proceeding is exempt and there is no article 2 determination to review, and pointless when there has been article 2 compliance and hearings have been held and determinations made (see *County of Monroe v Morgan,* 83 AD2d 777, 778, where we called the Legislature's attention to the ambiguity in EDPL 207 and the need for correction; see, also, *Matter of Aswad v City School Dist.,* 74 AD2d 972, 974 [KANE, J., concurring]).

DILLON, P. J., DENMAN and MOULE, JJ., concur with HANCOCK, JR., J.; GREEN, J., not participating.

Order reversed, without costs, and petition granted.