Carney v Carney (2018 NY Slip Op 02034)





Carney v Carney


2018 NY Slip Op 02034


Decided on March 23, 2018


Appellate Division, Fourth Department


, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 23, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


18 CA 17-01228

[*1]JUN W. CARNEY, PLAINTIFF-RESPONDENT,
v
PATRICK J. CARNEY, DEFENDANT-APPELLANT. TIMOTHY P. DONAHER, APPELLANT. (APPEAL NO. 1.) 






HARRIS BEACH PLLC, PITTSFORD (SVETLANA K. IVY OF COUNSEL), FOR DEFENDANT-APPELLANT AND APPELLANT.
MICHAEL STEINBERG, ROCHESTER, FOR PLAINTIFF-RESPONDENT.
CHIEF DEFENDERS ASSOCIATION OF NEW YORK, ALBANY (JAMES A. HOBBS OF COUNSEL), AND THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO, FOR CHIEF DEFENDERS ASSOCIATION OF NEW YORK, AMICI CURIAE. 


It is hereby ORDERED that said appeal insofar as taken by Timothy P. Donaher is unanimously dismissed and the order is reversed on the law without costs, the motion is granted, and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following opinion by Peradotto, J.:
 In these consolidated appeals, we must determine whether courts may impute income to a party in determining the party's eligibility for assigned counsel. We hold that courts have no such authority.
I
 Plaintiff and defendant are the divorced parents of two children. Following the divorce, plaintiff was awarded sole legal custody and primary physical residence of the children. Plaintiff subsequently filed several motions seeking a finding of contempt against defendant for his disobedience of prior orders of Supreme Court. Although the matter proceeded to trial in January 2015, the parties settled the dispute by an oral stipulation in which defendant admitted that he willfully violated a prior order by having contact with the children, providing them with phones, and having face-to-face and telephonic communication with them. The court sentenced defendant to five consecutive jail weekends followed by one work weekend. The parties agreed to further restrictions on defendant's access to the children, including scheduled periods of supervised visitation. The oral stipulation was subsequently entered as a written order (hereafter, stipulated order).
 According to plaintiff, defendant thereafter filed a petition in Family Court in May 2015 seeking sole custody of the children, but that petition was dismissed. Defendant moved by order to show cause in October 2015 to modify the terms of the stipulated order by granting joint custody of the children and primary physical residence with him or, alternatively, unsupervised visitation, but he subsequently limited that request to changing his visitation from supervised to [*2]unsupervised. The court granted plaintiff's motion to dismiss defendant's application, and this Court affirmed the order (Carney v Carney, 151 AD3d 1912, 1912 [4th Dept 2017], lv dismissed 30 NY3d 1012 [2017]).
 In April 2016, defendant filed a petition in Family Court seeking to modify the stipulated order by removing the supervised visitation restriction and obtaining custody and primary physical residence of the children. Defendant was assigned a public defender in Family Court. Plaintiff subsequently moved in Supreme Court by order to show cause filed in June 2016 seeking, among other things, an order adjudicating defendant in contempt for his continued disobedience of the court's prior orders, sentencing defendant to an appropriate period of incarceration, and modifying defendant's visitation to "eliminate all rights of visitation and all rights of communication with [the] children."
 During a subsequent appearance before Supreme Court, defendant appeared pro se and requested that counsel be appointed for him given his status as an unemployed graduate student and his lack of a full-time job. Defendant admitted that his living expenses were "next to nothing," except for his car payment and insurance, because he had been residing with his parents for 6½ years. The court expressed reservation about appointing counsel because of defendant's advanced degree and demonstrated "high level of skills," stated that its "obligation is to protect the taxpayers of this state," and questioned whether it could impute income to defendant before making a decision on his request for assigned counsel. The court reserved decision on defendant's request and scheduled a hearing, and it also transferred defendant's April 2016 petition from Family Court.
 Following correspondence in which the Monroe County Public Defender's Office informed the court that defendant qualified for assigned counsel under the applicable eligibility guidelines, the court responded with further questions and thereafter requested a formal motion for the assignment of counsel. Defendant then moved ex parte for an order assigning counsel pursuant to County Law § 722, which he supported with an affirmation from an assistant public defender and several exhibits. The assistant public defender affirmed that the Public Defender's Office had evaluated defendant's financial circumstances in determining his eligibility for assigned counsel, and asserted that the court was precluded from considering defendant's potential income in determining whether to assign counsel. The motion was thereafter the subject of a lengthy oral argument.
 By the order in appeal No. 1, the court concluded that it had the authority to impute income to defendant in determining his eligibility for assigned counsel and that a hearing was required to determine the appropriate amount of income to impute to defendant (Carney v Carney, 54 Misc 3d 411, 414-436 [Sup Ct, Monroe County 2016]). As relevant here, the court reasoned that the legislature adopted an " unable to retain counsel' standard to assure representation at public expense to those in real need, but not [to] extend that precious right to litigants who, by choice, intentionally limit their income to avail themselves of publicly financed legal services" (id. at 417). With respect to the right to assigned counsel under the Family Court Act and other statutes for a party who "is financially unable to obtain" counsel (Family Ct Act § 262 [a]), the court held that the term "unable" meant "incapable" of paying counsel, and that the legislature intended for courts to consider "not what an individual is doing now, but what he [or she] is capable of doing now," which suggested an inquiry into the individual's "employment potential—the current capability to earn sums that exceed poverty limits—before assigning counsel" (Carney, 54 Misc 3d at 418). The court further determined that there is no authority restricting its ability to impute income to an applicant for assigned counsel (id. at 426), and that the imputation of income concept in the area of spousal maintenance and child support was likewise justified by public policy in the context of assigned counsel (id. at 429). The court then created a framework for an adversarial hearing by, among other things, appointing the Public Defender's Office to represent defendant for the limited purpose of supporting his application for assigned counsel and appointing special counsel to present the facts in favor of imputation (id. at 432-435). Finally, the court sought to limit the reach of its decision by urging that it "should not be read outside its current facts, in this a civil case context" (id. at 436). The court thus ordered an evidentiary hearing to determine defendant's eligibility for assigned counsel based on any imputed income.
 Following further proceedings and the evidentiary hearing, the court issued the order in [*3]appeal No. 2 in which it determined that $50,000 in income should be imputed to defendant and that defendant is not eligible for the appointment of counsel in the pending proceeding (Carney v Carney, 55 Misc 3d 1220[A], 2017 NY Slip Op 50667[U], *16 [Sup Ct, Monroe County 2017]).
 Defendant and Timothy P. Donaher, the Monroe County Public Defender, appeal from each order.
II
 As a preliminary matter, we note that the order in appeal No. 1 is not appealable as of right inasmuch as it did not decide a motion made on notice (see CPLR 5701 [a] [2]; Sholes v Meagher, 100 NY2d 333, 335 [2003]) and instead merely directed a hearing to aid in the disposition of a motion (see CPLR 5701 [a] [2] [v]; Matter of Martin [Henderson-Johnson Co., Inc.], 71 AD3d 1503, 1503 [4th Dept 2010]; Howell v Independent Union of Plant Protection Empls., 112 AD2d 754, 754 [4th Dept 1985]). Nevertheless, under the limited circumstances of this case, we treat the notice of appeal in appeal No. 1 as an application for leave to appeal and grant the application in the interest of justice (see Dreher v Martinez, 155 AD3d 688, 689 [2d Dept 2017]; Hurd v Hurd, 66 AD3d 1492, 1493 [4th Dept 2009]; Bergner v Bergner, 170 AD2d 421, 422 [2d Dept 1991]; see generally CPLR 5701 [c]; City of Buffalo Urban Renewal Agency v Moreton, 100 AD2d 20, 21 [4th Dept 1984]).
 As a further preliminary matter, we conclude that the appeals insofar as taken by Donaher must be dismissed inasmuch as he is not an "aggrieved party" and thus is not a proper appellant (CPLR 5511). A party is aggrieved when he or she " has a direct interest in the controversy which is affected by the result' and [when] the adjudication has a binding force against the rights, person or property of the party' " (Matter of DeLong, 89 AD2d 368, 370 [4th Dept 1982], lv denied 58 NY2d 606 [1983]). "The fact that the adjudication may remotely or contingently affect interests which [the party] represents does not give [it] a right to appeal' " (id.). Here, Donaher has no direct interest in the controversy between plaintiff and defendant, and the fact that the court's determinations may contingently affect interests that Donaher and his office represent does not give him a right to appeal. "The fact that the [decisions] contain[] language or reasoning that [Donaher] deems adverse to his interests does not provide him with a basis for standing to take an appeal' " (Matter of Cooper v Cooper, 74 AD3d 1868, 1869 [4th Dept 2010], quoting Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465, 472-473 [1986]).
III
 New York State law recognizes that "[p]ersons involved in certain family court proceedings may face the infringements of fundamental interests and rights, including the loss of a child's society and the possibility of criminal charges, and therefore have a constitutional right to counsel in such proceedings" (Family Ct Act § 261). As pertinent here, any person seeking custody of his or her child or "contesting the substantial infringement of his or her right to custody of such child" (§ 262 [a] [v]), as well as "any person in any proceeding before the court in which an order . . . is being sought to hold such person in contempt of the court or in willful violation of a previous order of the court" (§ 262 [a] [vi]), has "the right to have counsel assigned by the court in any case where he or she is financially unable to obtain the same" (§ 262 [a]; see County Law
§ 722; Judiciary Law § 770; Matter of Bly v Hoffman, 114 AD3d 1275, 1275 [4th Dept 2014]; Matter of Kissel v Kissel, 59 AD2d 1036, 1036 [4th Dept 1977]; see generally Matter of Jung [State Commn. on Jud. Conduct], 11 NY3d 365, 373 [2008]). Where, as here, Supreme Court exercises jurisdiction over a matter over which Family Court might have exercised jurisdiction had the proceeding been commenced there, Supreme Court must appoint counsel if required under Family Court Act § 262 (see Judiciary Law § 35 [8]).
 In that context, the court is statutorily obligated to advise a person of "the right to be represented by counsel of his or her own choosing, of the right to have an adjournment to confer with counsel, and of the right to have counsel assigned by the court in any case where he or she is financially unable to obtain the same" (Family Ct Act § 262 [a]). "Where a party indicates an inability to retain private counsel, the court must make inquiry to determine whether the party is eligible for court-appointed counsel" (Matter of Bader v Hazzis, 77 AD3d 742, 744 [2d Dept 2010]; see Matter of Otto v Otto, 26 AD3d 498, 499-500 [2d Dept 2006]). In fulfilling that obligation, the court may inquire into the person's financial circumstances, including, but not [*4]limited to, his or her income, expenses, obligations and other relevant financial information (see Matter of Pugh v Pugh, 125 AD3d 663, 664 [2d Dept 2015]; People v Lincoln, 158 AD2d 545, 546 [2d Dept 1990]) and, in furtherance of that inquiry, the court may require the submission of documentation (see Matter of Moiseeva v Sichkin, 129 AD3d 974, 975 [2d Dept 2015]).
 Here, the submissions in support of the motion for the assignment of counsel establish that, as of June 30, 2016, defendant was a Ph.D. candidate at Binghamton University, lived with his parents, was unemployed beyond some tutoring jobs while school was in session, did not own any real property, and owned a 14-year-old car that recently required an expensive repair. Defendant's tax returns and bank statements further confirmed a lack of income and assets. In light of these financial circumstances—the accuracy of which were not disputed (cf. Cohen v Cohen, 33 Misc 3d 448, 451-452 [Sup Ct, Nassau County 2011])—defendant qualified for assigned counsel pursuant to the Public Defender's Office eligibility guidelines.
IV
 Notwithstanding the foregoing, the court concluded that it had the authority to impute income to defendant in determining his eligibility and, upon imputing income to him, denied his motion for assigned counsel. We agree with defendant and the amici public defender organizations that the court had no authority to deprive defendant of his constitutional and statutory right to counsel on the basis of imputed income, and it therefore lacked the authority to conduct a hearing on that issue, requiring reversal of the order in appeal No. 1 and vacatur of the order in appeal No. 2 (see generally City of Buffalo Urban Renewal Agency, 100 AD2d at 26).
A
 Addressing first the statutory language, we observe that the legislature has used the same phrase throughout New York State law to designate when a person is entitled to court-appointed, state-financed counsel, i.e., the person is "financially unable to obtain" counsel (Family Ct Act § 262 [a]; see County Law § 722; CPL 180.10 [3] [c]; Judiciary Law § 35 [1]; see also Correction Law § 168-d [2]). Thus, contrary to the court's assertion, interpretation of that language implicates the appointment of counsel in both civil and criminal matters. We agree with defendant that a plain reading of the phrase "is financially unable to obtain" counsel (Family Ct Act § 262 [a]), which is written in the present tense, evinces that the requisite inquiry must relate to the person's present financial ability to pay for counsel. That interpretation is logically and legally cogent because the concern addressed in the relevant legislation is whether a party currently possesses the financial ability to obtain private counsel to represent him or her in the immediate, impending legal proceeding, not whether the party should have such an ability or may have such an ability in the future (see generally People v Simmons, 31 NY2d 997, 997-998 [1973]; Matter of DeMarco v Raftery, 242 AD2d 625, 626 [2d Dept 1997]). Moreover, contrary to the court's determination, Family Court Act § 261 expressly states that the purpose of sections 261 and 262 "is to provide a means for implementing the right to assigned counsel for indigent persons in proceedings under this act" (§ 261 [emphasis added]; see generally Bill Jacket, L 1975, ch 682,
§ 2). Thus, to the extent that the court properly suggested that the use of the word "indigent" would imply a present financial status (see Carney, 54 Misc 3d at 418 n 7), its use by the legislature in classifying the persons to whom the right of assigned counsel is provided under the statute further supports the conclusion that the phrase "is financially unable to obtain" counsel (Family Ct Act § 262 [a]) demands an inquiry into the person's present and actual financial ability to afford an attorney, not an inquiry into the person's potential employment capacity or hypothetical income.
B
 In determining that imputation of income was justified in evaluating eligibility for assigned counsel, the court held that the "fusion" of the imputed income concept from the Domestic Relations Law into the application for appointment of counsel under other statutes was justified by public policy (see Carney, 54 Misc 3d at 429). The court reasoned that, if a court may impute income to a party in the spousal maintenance and child support context, then the public has the same right to compel a highly-qualified party to obtain more remunerative employment before it extends free or low-cost legal services (see id.). We conclude that the [*5]court's analysis is flawed.
 Unlike imputation of income in the context of child support or spousal maintenance, there is no statutory authority for imputing income in determining eligibility for assigned counsel. With respect to child support, Family Court Act § 413 (1) (a) imposes an affirmative duty on parents to support their children "if possessed of sufficient means or able to earn such means" (emphasis added). Similarly, Domestic Relations Law § 236 (B) (6) (e) (1) (b) permits courts to consider "future earning capacity" when calculating post-divorce maintenance obligations. It is thus well established that, in determining a party's child support or spousal maintenance obligation, a court need not rely upon a party's own account of his or her finances, but may exercise its discretion by imputing income based upon such factors as the party's "education, qualifications, employment history, past income, and demonstrated earning potential" (Lauzonis v Lauzonis, 105 AD3d 1351, 1351 [4th Dept 2013]; see Matter of Deshotel v Mandile, 151 AD3d 1811, 1811-1812 [4th Dept 2017]; Haines v Haines, 44 AD3d 901, 902 [2d Dept 2007]; Matter of Dukes v White, 295 AD2d 899, 900 [4th Dept 2002]; McCanna v McCanna, 274 AD2d 949, 949 [4th Dept 2000]; see also Family Ct Act § 413 [1] [b] [5] [iv]). Family Court Act § 262 (a), by contrast, is silent on the imputation of income in the context of assigned counsel. The omission regarding imputation suggests that the legislature intended that courts consider an applicant's present financial status only, and not the potential earnings an applicant could or should be receiving in employment commensurate with his or her education and skills (see McKinney's Cons Laws of NY, Book 1, Statutes § 74).
 Furthermore, the court's public policy rationale is unsound. Imputing income for purposes of calculating child support or spousal maintenance is justified on the basis that the obligation imposed upon the parent or former spouse is an ongoing responsibility over a period of time and may be paid over that period (see Family Ct Act § 413 [1] [a]; Domestic Relations Law § 236 [B] [1] [a]; [6] [f]). Conversely, the evaluation of eligibility for assigned counsel requires a determination whether a party has presently available financial resources to pay an attorney to fulfill the immediate need for representation (see e.g. Family Ct Act § 262 [a]). Indeed, the legislature has specifically recognized that, in proceedings such as those in this case, "[c]ounsel is often indispensable to a practical realization of due process of law and may be helpful to the court in making reasoned determinations of fact and proper orders of disposition" (§ 261). A party cannot, however, fulfill the immediate need for representation by paying a private attorney with hypothetical, imputed income. We thus conclude that the court's reliance on cases allowing for the imputation of income in determining child support and spousal maintenance is misplaced.
C
 With respect to the general concern that public funds for assigned counsel may be misused to benefit persons able to afford private counsel, we note that County Law § 722-d provides in pertinent part that, "[w]henever it appears that the defendant is financially able to obtain counsel or to make partial payment for the representation or other services, counsel may report this fact to the court and the court may terminate the assignment of counsel or authorize payment, as the interests of justice may dictate, to the public defender."
 Furthermore, the court and plaintiff express concerns regarding the imbalance inherent in requiring plaintiff, the party in a better financial position, to pay for private counsel in order to seek defendant's compliance with prior court orders and defend against his petitions while allowing defendant to defend against his alleged violations and assert his claims with the assistance of publicly-funded counsel (Carney, 54 Misc 3d at 435-436; see Carney, 2017 NY Slip Op 50667[U], *15). Although those concerns are worth noting under the circumstances herein, we conclude that they do not warrant the denial of defendant's motion for the assignment of counsel. Contrary to the court's determination (see Carney, 2017 NY Slip Op 50667[U], *15), a person facing potential jail time for willfully violating court orders has a significant stake in the proceedings, and the legislature has guaranteed an equal playing field between the parties by providing such a person with assigned counsel if he or she is financially unable to obtain private counsel (see Family Ct Act
§§ 261, 262 [a] [vi]). Moreover, to the extent that the court is concerned that defendant could bring serial modification petitions with impunity, thereby causing plaintiff to repeatedly expend her personal funds, we note that sanctions may be imposed for frivolous conduct (see 22 NYCRR [*6]130-1.1) and, in an appropriate case, a court may preclude a party from filing new petitions without permission of the court where the record establishes that the party has abused the judicial process by engaging in meritless, frivolous or vexatious litigation (see Matter of Naclerio v Naclerio, 132 AD3d 679, 680 [2d Dept 2015]; Matter of Shreve v Shreve, 229 AD2d 1005, 1006 [4th Dept 1996]; see also Matter of Otrosinka v Hageman, 144 AD3d 1609, 1611 [4th Dept 2016]).
V
 We thus conclude that the court erred in determining that it was authorized to impute income to defendant in determining his eligibility for assigned counsel and, based upon the documentation provided by defendant indisputably establishing that he "is financially unable to obtain" counsel (Family Ct Act § 262 [a]), the court should have granted defendant's motion by the order in appeal No. 1. We note that the Public Defender's Office has previously represented that, in the event that defendant comes into greater income or assets during the course of the proceedings, the Public Defender's Office will request that the court, pursuant to County Law § 722-d, either mandate repayment by defendant or terminate the representation. Accordingly, we conclude that the order in appeal No. 1 should be reversed, defendant's motion for the assignment of counsel should be granted, and the matter should be remitted to Supreme Court for further proceedings before a different justice. In light of our determination in appeal No. 1, there is no reason to address any substantive issues in appeal No. 2 with respect to the court's calculation of imputed income following the evidentiary hearing, and we conclude that the order therein should be vacated.
Entered: March 23, 2018
Mark W. Bennett
Clerk of the Court